**ZENITH RADIO CORPORATION, Plaintiff,**

**v.**

**David L. LADD, Commissioner of Patents, Defendant.**

**Civ. A. No. 4–61.**

United States District Court District of Columbia.

Oct. 14, 1961.

Homer R. Montague, Washington, D. C., Hugh H. Drake and Francis W. Crotty, Chicago, Ill., for plaintiff.

Samuel W. Cochran, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents to secure an adjudication that the plaintiff is entitled to a reissue of a certain patent heretofore granted. The application had been denied by the Commissioner.

■ The apparatus to which this litigation relates is known as a transducer. It is used principally for activating a television receiver or changing its channels when it is in operation by remote control. It consists of a number of small rods mounted on a miniature stand. Each of the rods is tuned to a specific sound frequency in the ultrasonic range. A miniature hammer is connected to each of the rods. The hammer is, in turn, activated by manual pressure on a lever attached to the hammer. When the lever is pressed the hammer strikes the rod, which, in turn, vibrates and emits sound waves of the frequency to which it is tuned. These sound waves, in turn, activate or operate a transducer contained in the television receiver.

The patent application relates to the method of tuning the frequency of these little rods. The original patent which it is sought to reissue was issued to Rudnick on January 27, 1959, and is Number 2,870,521. It was acquired by mesne assignments by the plaintiff in this action, who filed an application for reissue on May 13, 1959, Serial Number 818992. The purpose of the reissue was to amend the claims of the original patent in a manner that is not material to this litigation.

The specific method of tuning the rods consisted, first, of cutting them to a predetermined length and then making a final adjustment by removing some material from a nodal point in the rod. During the pendency of the application for reissue there came to the notice of the applicant an article written by one George W. Pierce and published in the proceedings of the American Academy of Arts and Sciences for April, 1928. This article referred to the method of tuning the rods such as are involved in this litigation and made the following statement on. this point: "A rod can be predetermined and cut in a lathe to one/one-hundreth of a centimeter so that the final frequency adjustment to a standard value requires very little grinding. The end is ground off to raise the frequency. If too much is ground off at the end, it can be corrected by grinding away a little from the girth near the center of the rod." In the light of this disclosure the applicant amended its application for reissue of patent by substituting a claim known as Claim 9, and which is the claim involved in this litigation, which limited the method of tuning or adjusting the frequency of the rod by cutting at least one hole of round cross-section and of a small diameter within a nodal plane of the rod.

The tribunals of the Patent Office rejected the application on the ground that the idea of boring a minute hole in the rod for the purpose of adjusting the frequency did not constitute invention in the light of the Pierce disclosure that the frequency could be adjusted by removing a small portion of material from a nodal point in the rod. The issue to be determined is a narrow one, namely, whether it constituted an exercise of the inventive faculty to devise the idea of boring a minute hole in the rod for the purpose of adjusting its sound frequency. In view of the fact that Pierce had suggested in a general way that the result could be attained by removing some material from the rod at its nodal point, it was the view of the Patent Office that boring a minute hole is merely one of the ways by which the Pierce suggestion could be made effective and that it was immaterial whether this was done by making a groove around the rod or by drilling or boring a minute hole into it.

On this point the Examiner of the Patent Office made the following statement: "The basic aim is to remove material, and it does not matter whether the hole is round, square or a groove." The Board of Appeals discussed this matter as follows: "Pierce definitely teaches the basic principle broadly involved herein of removing material from the central portion of a rod." And, then, the Board continues: "While Pierce apparently removes the material from the surface of the rod by grinding, we cannot overlook the fact, of which we take judicial notice, that material removal broadly by drilling holes for the purpose is a well known con-

ventional expedient." And, again, the Board says: "Consequently, we think that it would fall well within the skill of one skilled in the art to effect the final material removing operation in Pierce by the drilling or cutting of a round hole as called for by the claim." The Board concludes: "On this basis, we are not impressed by the various arguments of appellant concerning the comparative aspects of grinding and drilling a hole for the purpose of material removal."

The Court is also led to the view that the contention that it was an invention to drill a hole as distinguished from a groove is an afterthought, as appears from an examination both of the Rudnick patent and of the application for reissue. Thus, the Rudnick patent, in Column 2, Lines 52 to 54, states: "The removal of material of the transducer at the nodal plane may be accomplished by a groove or by holes." There is no suggestion there that there is any patentable distinction between a groove or a hole or that there is anything more than the choice of the person who is using the method of removing material from the transducer at the nodal plane. The same thought is repeated several times in the patent. For instance, in Line 58 of Column 2 it is stated that "either a groove or shallow holes are cut in transducers until the frequency is found to be correct." Again, the patent states, in Column 3, Lines 5 to 7, "Material is removed by grooves or holes." Considering the present application, the same conclusion is reached.

The Court realizes, of course, that to a certain extent the determination of the question whether a particular step constitutes an invention or the product of mechanical skill involves a question of judgment and opinion. In a technical matter such as is presented here, a great deal of weight must be attached to the views of the tribunals of the Patent Office and, unless it is reasonably clear that the Patent Office is in error, its action should not be disturbed.

In this instance, the Court not only is of the opinion that a sufficient showing has not been made that the Patent Office was in error, but reaches the independent conclusion that in the light of the foregoing discussion the matter covered by the claim in the reissue application does not represent a patentable invention over the prior disclosure.

Accordingly, judgment will be rendered on the merits in favor of the defendant dismissing the complaint on the merits.

Counsel will please submit proposed findings of fact and conclusions of law.

The Court wishes to express its gratitude to counsel on both sides for their very able and helpful presentation of the issues involved in this case.